SEALED

E-FILED
Wednesday, 24 January, 2007  02:47:36 PM
Clerk, U.S. District Court, ILCD

FILED
JAN 2 4 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# United States District Court

___CENTRAL___ DISTRICT OF ___ILLINOIS___

UNITED STATES OF AMERICA

v.

DARYL JODY SHAW,

**CRIMINAL COMPLAINT**

CASE NUMBER: 07- 6401 M

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief.

### CONSPIRACY TO MANUFACTURE METHAMPHETAMINE

From at least March 2004, through at least January 24, 2007, in Henry County, in the Central District of Illinois, and elsewhere, the defendant,

**DARYL JODY SHAW,**

did conspire with other persons to knowingly and intentionally manufacture, distribute, and possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II Controlled Substance,

all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

I further state that I am a Special Agent, Drug Enforcement Administration, and that this Complaint is based on the following facts:

See attached Affidavit in Support of Complaint which is made a part hereof.

Continued on the attached sheet and made a part hereof:   ☒ Yes ☐ No

S/Mark Folven

_____
Signature of Complainant
Mark Folven, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

January 24, 2007                                  at         Peoria, Illinois
_____              _____
Date                                                         City and State

John Gorman                                           S/John A. Gorman
United States Magistrate Judge
_____              _____
Name & Title of Judicial Officer                     Signature of Judicial Officer

### AFFIDAVIT IN SUPPORT OF COMPLAINT

MARC FOLVEN, being first duly sworn upon oath, deposes and states as follows:

1. Affiant is a Special Agent with the Drug Enforcement Administration (DEA) and has been so employed since September, 1989. Prior to his employment with DEA, affiant was employed as a Law Enforcement Officer for the Irving, Texas Police Department for eight years. Affiant is aware of the information set forth below in this affidavit through personal investigation, discussions with other law enforcement officers, and a review of the reports of other officers.

2. Cooperating Defendant Number One, hereinafter referred to as "CD1," has pled guilty to federal drug charges pursuant to a cooperation plea agreement with the Government. CD1 has provided information in the past that has been investigated and determined to be accurate.

3. CD1 reported that in 2003, CD1, Daryl Jody Shaw and Subject Number One, hereinafter referred to as "S1," would travel to LaSalle, IL and the Quad Cities area for the purpose of acquiring pseudoephedrine cold tablets. CD1 stated that they would enter various stores and each individual would purchase three boxes of pseudoephedrine pills. CD1 states that on the majority of the occasions they would purchase boxes containing 96-30 milligram pills. CD1 stated that subsequent to accumulating the pills, the three would remove the pills from the packaging and CD1 then provided the pills to Audie Weir, who would then manufacture methamphetamine for CD1. Weir gave CD1 one-half ounce of methamphetamine as payment every twenty boxes of pills CD1 gave to him. CD1 gave Daryl Jody Shaw between two to two and one-half grams of methamphetamine as compensation for assisting CD1 in acquiring the pills.

4. CD1 stated Daryl Jody Shaw only assisted CD1 in obtaining pills as described above on a couple of occasions, due to Weir being informed Daryl Jody Shaw was telling individuals he (Daryl Jody Shaw) was obtaining pseudoephedrine cold tablets for Weir. CD1 stated Weir became upset at CD1 due to this, therefore CD1 stopped using Daryl Jody Shaw's assistance in obtaining pseudoephedrine pills.

5. CD1 stated in March of 2004, subsequent to CD1's source for methamphetamine, Audie Weir, being arrested on federal drug charges, Daryl Jody Shaw taught CD1 how to manufacture methamphetamine.

6. CD1 stated one of the first times he manufactured methamphetamine with Daryl Jody Shaw was at Subject Number Two's, hereinafter referred to as "S2," residence located in Kewanee, Il. CD1 stated on said occasion they utilized 1,000 pseudoephedrine cold pills. CD1 estimated they manufactured approximately 20 grams of methamphetamine with said pills.

7. CD1 reported on some occasions during 2004 and 2005, S2 would acquire all the elements necessary to manufacture methamphetamine and then provid the elements to CD1 and Daryl Jody Shaw to conduct the manufacturing process. CD1 estimated he manufactured methamphetamine with S2 and Daryl Jody Shaw between fifteen and twenty different occasions producing approximately twenty grams of methamphetamine on each occasion.

8. CD1 disclosed on various occasions CD1 and Daryl Jody Shaw manufactured methamphetamine in an abandon house located in rural Kewanee, Illinois. CD1 stated CD1 and Daryl Jody Shaw would acquire the necessary elements to manufacture methamphetamine and Subject Number Three, hereinafter referred to as "S3," would

drive them to steal the anhydrous ammonia and drop them off at the abandoned house. CD1 advised they would start to manufacture the methamphetamine at the abandon house and then complete the final process at Subject Number Four's, hereinafter referred to as "S4," residence located in Kewanee, Illinois.

9. CD1 stated upon arriving at S4's residence, S4 would have jars and filters ready for CD1 and Daryl Jody Shaw to complete the final stage of the manufacturing process. CD1 stated they would produce approximately 15 grams of methamphetamine on each occasion and did this for approximately one month until S4's residence was searched by law enforcement authorities.

10. CD1 stated subsequent to S4's residence being searched, CD1 and Daryl Jody Shaw utilized Confidential Source Number One, hereinafter referred to as "CS1," for transportation and utilized CS1's residence in Kewanee, IL to complete the final step in the manufacturing process. CD1 also advised CS1 provided CD1 with pseudoephedrine pills in exchange for methamphetamine. CD1 gave CS1 one gram of methamphetamine for every 400 pseudoephedrine pills CS1 provided to CD1.

11. CD1 manufactured methamphetamine with Daryl Jody Shaw until late 2004 when CD1 thought Daryl Jody Shaw stole a quantity of liquid methamphetamine CD1 from CD1's residence in Kewanee, Illinois.

12. CS1 has provided information that has been verified and proven to be reliable. ISP agents have used CS1's information in the past to arrest at least two individuals on methamphetamine manufacturing charges. CS1, stated during 2004, CS1 assisted Daryl Jody Shaw in the manufacturing of methamphetamine on two or three occasions. CS1 stated that CS1's involvement consisted of providing transportation to

Daryl Jody Shaw and CD1 and purchasing pseudoephedrine cold tablets for said individuals. CS1 transported Daryl Jody Shaw and CD1 to an abandoned house located in rural Kewanee, Illinois. CS1 stated Daryl Jody Shaw and CD1 would complete the entire manufacturing process at the abandoned residence and CS1 would transport the two individuals back to Kewanee, Illinois. CS1 related CS1 received small quantities of methamphetamine as compensation for CS1's assistance.

13. Confidential Defendant Two, herein after referred to as "CD2" has plead guilty to federal gun charges pursuant to a cooperation plea agreement with the government. CD2 has provided information in the past that has been investigated and determined to be accurate and reliable.

14. CD2 disclosed subsequent to moving to Kewanee, IL in the fall of 2005, CD2 met Daryl Jody Shaw. CD2 stated subsequent to meeting Daryl Jody Shaw, Daryl Jody Shaw taught CD2 how to manufacture methamphetamine. CD2 estimated during the fall of 2005, CD2 manufactured methamphetamine with Daryl Jody Shaw on nine or ten occasions and estimated the two manufactured between 5 and 15 grams on each occasion. CD2 and Daryl Jody Shaw cooked at various locations in and near Kewanee, IL, including near parks and behind churches.

15. Confidential Defendant Three, herein after referred to as "CD3" has plead guilty to federal gun charges pursuant to a cooperation plea agreement with the government. CD3 has provided information in the past that has been investigated and determined to be accurate and reliable.

16. CD3 stated from Summer of 2005 through January of 2006, CD3 purchased five to six grams of methamphetamine from Daryl Jody Shaw at least one time per week.

Daryl Jody Shaw delivered the drugs to CD3 at CD3's residence in Kewanee, Illinois. CD3 stated that CD3 would either pay Daryl Jody Shaw approximately $300 for the methamphetamine or would pay Daryl Jody Shaw approximately one pound of marijuana for the methamphetamine.

17. On February 14, 2006, CD3, at the direction of the Illinois State Police (ISP) introduced two ISP undercover agents, wearing audio-recording devices, to Daryl Jody Shaw at CD3's residence for the purpose of selling Daryl Jody Shaw 40 boxes (69.12 grams) of pseudoephedrine. During the meeting, which was recorded pursuant to a State of Illinois, Henry County authorized overhear order, the agents negotiated the sell of said pseudoephedrine. Daryl Jody Shaw at the time of the transaction provided the undercover agents $140.00 Untied States Currency and approximately one gram of methamphetamine. Daryl Jody Shaw told the agents that he would give them an additional $160.00 United States Currency and one-eighth ounce of methamphetamine after he made methamphetamine with the pills.

18. Immediately following the transaction Daryl Jody Shaw was arrested. Agents seized 38 - 30 milligram pseudoephedrine pills and three lithium batteries from Daryl Jody Shaw's pants pockets. Subsequent to his arrest, Daryl Jody Shaw was advised of his Miranda rights and admitted to agents that he had manufactured methamphetamine during the last three years. Daryl Jody Shaw stated he used the anhydrous ammonia method to manufacture methamphetamine and yielded between three and six grams each time he manufactured methamphetamine.

19. Confidential Source Number Two, hereinafter referred to as "CS2," plead guilty to state drug charges. Some of the information provided by CS2 has been verified

and proven to be reliable. In January 2007, CS2 stated that CS2 has known Daryl Jody Shaw for approximately 20 years. CS2 stated in September of 2006, CS2 became involved in the manufacturing and distribution of methamphetamine with Daryl Jody Shaw. CS2 estimated from September of 2006, through November of 2006, CS2 manufactured methamphetamine with Daryl Jody Shaw on at least ten occasions. CS2 stated on each occasion CS2 and Daryl Jody Shaw started the manufacturing process at Daryl Jody Shaw's residence, 705 E. Main Street, Lafayette, IL. Subsequent to starting the manufacturing process, Daryl Jody Shaw would move the methamphetamine lab to a shed located 610 E. Main Street Lafayette, Illinois. CS2 stated the shed is located at a residence which is only utilized by the owners during the summer months. According to a review of Henry County Circuit Court records, on May 10, 2006, Daryl Jody Shaw was released on bond to 705 E. Main Street, Lafayette, IL.

20. CS2 stated that on or about November 25, 2006, CS2, Daryl Jody Shaw, and Subject Number Five, hereinafter referred to as "S5," rented room 219 at the Days Inn located north of Interstate 80 near Sheffield, Illinois, for the purpose of manufacturing methamphetamine in the room with Daryl Jody Shaw and CS2. CS2 also stated Daryl Jody Shaw was utilizing S5 as a source for pseudoephedrine pills. On Friday, January 20, 2007, ISP agents contacted employees of the aforementioned hotel. The employees advised that S5 had rented room 219 on November 24, 2006 and paid cash. On January 24, 2007, ISP agents checked the pseudoephedrine logs books at Walgreens and Walmart in Kewanee, IL. Records showed that S5 purchased pseudoephedrine pills at Walgreens on November 11, 21, December 9 and 18, 2006. Records showed that S5 purchased pseudoephedrine pills at Walmart on November 11, 21, and December 18, 2006.

21. On Friday January 20, 2007, at the direction of ISP agents, CS2 contacted Daryl Jody Shaw by telephone to determine if Daryl Jody Shaw was still manufacturing methamphetamine. Daryl Jody Shaw informed CS2 he was and he would manufacture methamphetamine for CS2, if CS2 could supply the pseudoephedrine pills. This telephone call was recorded.

22. On Monday January 22, 2007, CS2, at the direction of ISP agents, CS2 contacted Daryl Jody Shaw by telephone and told Daryl Jody Shaw that CS2 could provide him with pseudoephedrine pills in exchange for United States Currency and or methamphetamine. Talking in coded language, Daryl Jody Shaw stated he was unable to manufacture methamphetamine at his residence in Lafayette, Illinois, due to his grandmother being present. Daryl Jody Shaw advised CS2 to contact him on Tuesday January 23, 2007 to set up a time to make methamphetamine at his residence. This telephone call was recorded.

23. On Tuesday January 23, 2007, CS2 received an unrecorded telephone call from Daryl Jody Shaw. During said contact, Daryl Jody Shaw informed CS2 he would need CS2 to supply him with Coleman Fuel and lithium batteries as well as pseudoephedrine . Daryl Jody Shaw advised CS2 Daryl Jody Shaw would contact CS2 later in the evening and CS2 should bring the items to Daryl Jody Shaw's residence at that time.

24. On Tuesday evening, January 23, 2007, CS2, at the direction ISP agents, attempted to contact Daryl Jody Shaw, but received no answer. On Wednesday, January 24, 2007, CS2 received an unrecorded telephone call from Daryl Jody Shaw. During said contact, Daryl Jody Shaw informed CS2 that he missed her call yesterday because his

telephone ran out of minutes. Daryl Jody Shaw informed CS2 that she could come over to his house anytime today with the previously requested materials so they could make methamphetamine.

S/Mark Folven
MARC FOLVEN,
SPECIAL AGENT,
DRUG ENFORCEMENT
ADMINISTRATION

Sworn to before me and subscribed in my presence this 24th day of January, 2007.

S/John A. Gorman
JOHN GORMAN
UNITED STATES MAGISTRATE JUDGE